## APPEAL OF FIDELITY & DEPOSIT CO. OF MARYLAND.

Docket No. 3503.   Decided July 20, 1926.

1. The Board has jurisdiction of an appeal by the taxpayer from the determination of a deficiency, the sole object of which appeal is to secure a determination by the Board that the deficiency should be increased.

2. Evidence in the record reviewed and *held* to be insufficient to enable the Board to determine whether the treatment accorded by the Commissioner to certain payments made by the taxpayer was correct or incorrect. In the circumstances, the determination made by the Commissioner must be approved.

*Washington Bowie, Jr., Esq.*, for the taxpayer.
*Benjamin Saunders, Esq.*, for the Commissioner.

Before GRAUPNER,[1] TRAMMELL, and PHILLIPS.

Taxpayer appeals from the determination of a deficiency of $9,-739.24, income and profits taxes for 1920, notice of which determination was sent to the taxpayer, together with notice of an overassessment of income and profits taxes for 1919 of $47,220.07. Taxpayer alleges certain errors in computing depreciation, and error in refusing to allow the taxpayer a deduction for a reserve of $101,086.57, alleged to have been established to meet claims then pending against the taxpayer under bonds and policies outstanding in Germany and Austria.

### FINDINGS OF FACT.

The taxpayer is a Maryland corporation, engaged in the business of writing surety and casualty bonds, with its principal office in Baltimore, and is doing business in all States of the United States and elsewhere. It was doing business in Germany and Austria in April, 1917, at the time the United States entered the World War.

A part of its business in Germany and Austria arose under a reinsurance agreement with a German plate-glass insurance company, known as the "Harmonia", under which the taxpayer reinsured the said Harmonia to the extent of 50 per cent of its plate-glass insurance. This insurance agreement expired in October, 1917.

The taxpayer had included in its annual statement of December 31, 1917, as a part of its general loss reserves, $67,382.06 to meet policy losses in Germany, Austria and Hungary, of which $40,000 was set up to meet the liability under the Harmonia agreement. The taxpayer at the outbreak of the war had deposits and securities in such countries in excess of its liabilities and reserves for liabilities

---

[1] This decision was prepared during Mr. Graupner's term of office.

therein. In preparing its statement of December 31, 1917, a part of the value of such foreign assets had been eliminated from the asset accounts by the taxpayer. The insurance examiner for the Insurance Department of the State of Maryland in his report eliminated from assets all property held by the company in enemy countries, and at the same time eliminated from the reserves set up by the company its liabilities in enemy countries. The assets being in excess of the liabilities, the net result was to reduce the surplus of the company.

On or about January 2, 1919, the taxpayer received a communication from its European director advising it of the status of the Harmonia account and of certain other liabilities for commissions, interest, etc., owing in Germany and Austria. He advised that the loss reserve of the Harmonia for plate-glass insurance, as of October 1, 1917, was 994,705.52 marks, of which 497,352.76 marks was the share of the taxpayer. He further advised that statements had shown that this reserve was inadequate by approximately 26 per cent and, as the cost of plate glass was constantly rising, it was estimated that the reserve was inadequate by an even greater percentage. The taxpayer thereupon, on or about January 2, 1919, set up on its books a reserve of $75,000, being 500,000 marks at 15 cents per mark, the approximate rate of exchange then existing. This was carried on the statement of the company as "Reserve for liquidation of foreign business." Subsequently this reserve was increased to $101,086.57. At the close of the year 1919 this reserve account continued at $101,086.57. Among the disbursements of the company for 1919 appears an item "Expense account of liquidation of Foreign Business $210,040.07."

At the close of the year 1919 the taxpayer carried upon its account a reserve for losses arising under policies of fidelity and casualty insurance of $2,076,852.19, which has been recognized by the Commissioner as a proper reserve for accrued losses in computing the taxpayer's income for 1919.

During the year 1920 taxpayer expended $89,924.19 in settlement of its foreign liabilities, which amount was allowed as a deduction by the Commissioner in computing the deficiency for that year. In 1921 it expended approximately $13,000, and since that date has expended other sums. Such expenditures have been charged by it against the reserve existing on December 31, 1919.

Depreciation allowable as a deduction for the year 1919 is $48,-626.40, instead of $48,220.15 allowed by the Commissioner. Depreciation allowable as a deduction for 1920 is $49,599.67, instead of $48,984.40 allowed by the Commissioner.

The original return filed by the taxpayer for 1919 set out a tax liability of $130,199.57. The tax determined by the Commissioner in

the deficiency letter is $82,979.50, resulting in an overassessment of $47,220.07.

OPINION.

PHILLIPS: The facts which are relied upon by the taxpayer to establish jurisdiction in the Board are set out in the findings. As to 1919, it appears that on the original return taxpayer computed a tax liability of $130,199.57, while the Commissioner determined the liability to be $82,979.50, resulting in an overassessment of $47,220.07. It is clear that under section 274 (g) of the Revenue Act of 1926 the Board has no jurisdiction of the appeal so far as it relates to 1919. *Appeal of Cornelius Cotton Mills*, 4 B. T. A. 255.

The chief assignment of error made by the taxpayer is the refusal of the Commissioner, in computing the amount, of increase in its reserves for 1919, to include in the computation the "Reserve for liquidation of foreign business" in the amount of $101,086.57. On the theory that this reserve was not set up for the purpose of meeting policy losses which had accrued, the Commissioner has refused to allow it as a deduction in 1919, but proposes to allow the amounts as deductions when paid, having allowed $89,924.19 in 1920.

It is taxpayer's contention that its net income and its tax liability for 1919 should be reduced and the overassessment for that year increased, at the same time increasing the net income and the deficiency for 1920. Since we have no jurisdiction to determine the question as to 1919, the sole question for consideration is whether the net income, and, consequently, the deficiency determined by the Commissioner for 1920 should be increased by disallowing the deduction in that year of the amount allowed by the Commissioner.

The reserve of $75,000 set up in January, 1919, appears to have been for the purpose of meeting the losses reported by its European manager to exist as a result of the agreement with the Harmonia Company. This agreement had been entered into in 1912 and terminated in October, 1917. The greater part of the losses arising under that agreement had been reported to the taxpayer prior to the declaration of war, and in 1917, as a part of its general loss reserve, it had set aside $40,000 to meet its obligation under this agreement. The insurance examiners, however, had seen fit to eliminate from taxpayer's assets and liabilities all assets owned and all liabilities owed in enemy countries. The loss reserve of $2,076,852.19 carried by the taxpayer at the close of the year 1919 does not appear to have included any amount for policy losses incurred in enemy countries. In such circumstances the taxpayer was doubtless justified in setting up a separate reserve for such losses. The reserve which was carried on its books at the close of 1919 was not $75,000, as originally set up on the basis of the information from its European director,

but $101,086.57. In the meantime it had paid out during the year 1919, according to its statement of receipts and disbursements, $210,-040.07 as " Expense account of liquidation of foreign business." We do not know what part of such sum was paid to the Harmonia Company. If the taxpayer's theory is to be accepted, we must assume that no part of this sum was paid to that company, although the letter from the European manager states that the final settlement with that company is to be made in 1918. There is no convincing testimony in the record that the reserve for the liquidation of foreign business existing at the close of 1919 was to meet policy losses, as claimed by the taxpayer, and was not a reserve to cover the expense of finally winding up taxpayer's affairs in Europe, as contended by the Commissioner, or to show that the payment of $89,-924.19, made during 1920 and charged against such reserve, was for policy losses occurring and reported prior to 1920 and which should properly have been the subject of a reserve in prior years. The record is insufficient to enable us to determine that the treatment accorded this payment by the Commissioner is incorrect, and for that reason his determination must be accepted.

Both parties to the appeal have proceeded on the theory that, under the Revenue Act of 1918, the net addition to a reserve for losses under fidelity and casualty policies is properly deductible. In our discussion we have assumed, without deciding, that this assumption is correct. See Laws of Maryland, 1914, ch. 631. From a casual examination it would appear that the reserve for outstanding losses required under such law is to include an amount reasonably sufficient to cover probable expenses, as well as the probable payment in each case. The evidence submitted in this appeal, however, is insufficient to establish that the payment made in 1920 was such that it should have been made from any reserve which was properly set up in a prior year.

It was stipulated that certain errors had been made in the amounts of depreciation. This stipulation is included in the findings of fact.

> *The proceeding, so far as relates to 1919, is dismissed and an order will be entered accordingly. The deficiency for 1920 should be recomputed in accordance with the stipulation concerning depreciation. Order of redetermination will be entered on 15 days' notice, under Rule 50.*